UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

COREY MAZYCK,

                    Plaintiff,

       v.

OFFICER JOHN DOE 1-10,
SUPERINTENDENT GREGORY KELLER,
SGT. MATTHEW W. SCULL, SGT.
BERGHORN, and OFFICER
HENDRICKSON,

                Defendants.

_____

**DECISION AND ORDER**

6:20-CV-06055 EAW

## <u>INTRODUCTION</u>

*Pro se* plaintiff Corey Mazyck ("Plaintiff") brings this action under 42 U.S.C. § 1983 against defendants Deputy Superintendent of Security Gregory Keller, Sergeant Matthew W. Scull, Sergeant Berghorn, Officer Hendrickson, and "Officer John Doe 1-10" (hereinafter "Defendants"). Pending before the Court is Defendants' motion for summary judgment. (Dkt. 36). For the following reasons, Defendants' motion is granted except as to the excessive use of force claim against Officer Hendrikson, who remains as the only defendant in this action.

- 1 -

## FACTUAL BACKGROUND

On August 10, 2018, Plaintiff arrived at Elmira Correctional Facility ("Elmira"). (Dkt. 36-2 at ¶ 1).[1]  The next day, Sergeant Issac ("Sgt. Issac") conducted an arrival interview and asked Plaintiff if he had any enemies.  (*Id.*).  Plaintiff informed Sgt. Issac that he had been attacked on two prior occasions at other facilities and currently had an ongoing dispute with his criminal co-defendant, J. Padilla.  (*Id.*).  Sgt. Issac told Plaintiff that J. Padilla was at Elmira but currently housed in the Special Housing Unit, separate from the general population, while awaiting a "Tier 3" disciplinary hearing.  (*Id.*).

Following the arrival interview and a 72-hour quarantine, Plaintiff was released into Elmira's general population.  (*Id.* at ¶ 3).  Between August 12 and August 19, 2018, Plaintiff had a series of encounters with other incarcerated individuals, during which he learned that J. Padilla: (1) was affiliated with the Bloods; (2) had orchestrated the previous two attacks on Plaintiff at other facilities; and (3) had ordered another attack on Plaintiff to

---

[1]     Pursuant to Local Rule of Civil Procedure 56(a)(1), Defendants filed a statement of undisputed facts in support of their summary judgment motion.  (*See* Dkt. 36-2).  Although Plaintiff filed a response (*see* Dkt. 49), it failed to respond to each numbered paragraph in Defendants' statement as required by Local Rule 56(a)(2).  And with the exception of a one-page affirmation contained in that response (which, peculiarly, asks that Defendants' summary judgment be granted) (*see id*. at 4), Plaintiff has submitted no evidentiary proof in opposition to the pending motion.  Plaintiff was forewarned that he needed to submit evidence to oppose the summary judgment motion and his response to Defendants' motion needed to include "a separate, short, and concise statement of material facts as to which [he] contends there exists a genuine issue to be tried."  (Dkt. 47 at 2).  The Court further warned that "[i]n the absence of such a statement by Plaintiff, all material facts set forth in Defendants' statement of material facts not in dispute will be deemed admitted."  (*Id.* at 2-3).  The Court therefore treats the facts set forth in Defendants' Statement of Undisputed Facts "admitted for the purposes of" the instant motion where supported by admissible evidence in the record.  Loc. R. Civ. P. 56(a)(2); *see N.Y. State Teamsters Conf. Pension & Ret. Fund v. Express Servs. Inc.*, 426 F.3d 640, 648 (2d Cir. 2005).

occur at Elmira.  (*Id.* at ¶¶ 3-4).  On August 20, 2018, Plaintiff wrote a letter to defendant Deputy Superintendent of Security Gregory Keller ("DSS Keller"), in which he articulated his safety fears and J. Padilla's affiliation with the Bloods.  (*Id.* at ¶ 6).  Plaintiff sent the letter to DSS Keller through Elmira's internal mail system.  (*Id.*).

Several days later, on August 23, 2018, Plaintiff was attacked in Shop 5's second-floor orientation room by two incarcerated individuals, Roman and Rubin, armed with sharp objects.  (*Id.* at ¶ 17).  Defendants Correctional Officer Hendrickson ("C.O. Hendrickson") and Sergeant Scull ("Sgt. Scull"), as well as two other corrections officers, responded to reports of a fight in the second-floor orientation room.  (*Id.* at ¶ 36).  Upon entering the room, the officers ordered Roman, Rubin, and Plaintiff to stop fighting, and Plaintiff complied by separating himself and backing away from the other two individuals. (*Id.* at ¶¶ 37-38).  By the time the fight broke up, Plaintiff had suffered multiple lacerations to his face and head.  (*Id.* at ¶ 17).

C.O. Hendrickson approached Plaintiff and told him "to face the fucking wall" and that "it's in your best interest to make sure your blood doesn't get on me."  (*Id.* at ¶ 39). Plaintiff complied, and C.O. Hendrickson handcuffed Plaintiff's hands behind his back. (*See id.* at ¶ 40).  C.O. Hendrickson then informed Plaintiff that he was being taken to medical for his injuries.  (*Id.* at ¶ 41).

As Plaintiff and C.O. Hendrickson exited the second-floor orientation room, they took a right and passed other incarcerated individuals, including Rubin and Roman, who were lined up against the wall in the hallway.  (*Id.* at ¶¶ 41-42).  Rubin was facing and had his hands against the wall in a "pat frisk position," but as Plaintiff and C.O. Hendrickson

passed by, "Rubin came off the wall toward Plaintiff." (*Id.* at ¶¶ 43-44). Plaintiff kicked at Rubin, and C.O. Hendrickson pushed Plaintiff away and into a doorframe. (*Id.* at ¶ 46). Plaintiff suffered a swollen lip, chipped tooth, and an abrasion to his shin from being pushed into the doorframe. (*Id.* at ¶ 48).

C.O. Hendrickson and Sgt. Scull continued to escort Plaintiff to medical. (*Id.* at ¶ 49). During the trip, Plaintiff told Sgt. Scull that C.O. Hendrickson had pushed him into the doorframe. (*Id.* at ¶ 50). Sgt. Scull responded by telling Plaintiff that he was a "rat," which he repeated in front of a number of other incarcerated individuals out in the H Block recreation yard. (*Id.* at ¶¶ 51, 54). Further, before the three men entered medical, Sgt. Scull told Plaintiff that he would make sure that everyone at Elmira knew Plaintiff was a "rat" and that Plaintiff probably was not going to make it home. (*Id.* at ¶ 55).[2]

C.O. Hendrickson, Sgt. Scull, and Plaintiff reached medical, where defendant Sergeant Berghorn ("Sgt. Berghorn") was on duty as infirmary sergeant. (*Id.* at ¶ 58). A nurse examined Plaintiff's injuries, and Sgt. Scull asked Plaintiff whether he wanted to be placed in protective custody ("PC"). (*Id.* at ¶¶ 56, 60). Plaintiff ultimately was sent to an outside hospital for care, but he returned to Elmira the same day and met with Sgt. Scull to fill out his PC paperwork. (*Id.* at ¶¶ 62, 64). Although Plaintiff was not placed immediately into PC, he was placed on "keep-lock status" in a general population block until his disciplinary hearing six days later. (*See id.* at ¶¶ 66, 72-73). Plaintiff was transferred to

---

[2]    Sgt. Scull denies Plaintiff's allegations (*see*, *e.g.*, Dkt. 36-1 at 734), but for purposes of this motion Defendants have treated the allegations as true (Dkt. 36-2 at 7 n. 7, 8 & 9).

PC during his disciplinary hearing, where he remained until he was transferred out of Elmira on October 2, 2018.  (*Id.* at ¶¶ 72, 74-75).

## PROCEDURAL BACKGROUND

Plaintiff filed his initial complaint on January 24, 2020.  (Dkt. 1).  On February 14, 2020, Defendants filed a motion to dismiss.  (Dkt. 6).  Plaintiff then filed an amended complaint on March 6, 2020 (Dkt. 8), and the Court denied Defendants' motion to dismiss as moot (Dkt. 11).  Plaintiff filed a second amended complaint on March 19, 2020, removing Sgt. Issac as a named defendant.  (Dkt. 9).[3]  The second amended complaint alleged six causes of action: (1) an excessive force claim against C.O. Hendrickson, in violation of the Eighth Amendment; (2) a failure-to-protect claim against DSS Keller, in violation of the Eighth Amendment; (3) retaliation claims against Sgt. Berghorn, Sgt. Scull, and C.O. Hendrickson, in violation of the First Amendment; (4) conspiracy to obstruct justice claims against Sgt. Berghorn, Sgt. Scull, and C.O. Hendrickson, pursuant to 42 U.S.C. § 1985(2); (5) claims for supervisory liability against Sgt. Berghorn, Sgt. Scull, and

---

[3]    Plaintiff's second amended complaint also purported to substitute C.O. Hendrickson for "Officer John Doe 1-10."  (*See* Dkt. 9).  "Where a plaintiff names 'John Doe' as a placeholder defendant because he does not know the identity of an individual defendant, he is generally required to replace the placeholder with a named party within the applicable statute of limitations period."  *Abreu v. City of New York*, 657 F. Supp. 2d 357, 363 (E.D.N.Y. 2009) (citing *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 468-70 (2d Cir. 1995)); *see Singletary v. Allen*, 588 F. Supp. 3d 359, 367 (W.D.N.Y. 2022).  Actions brought under 42 U.S.C. §§ 1983 and 1985 must be brought within three years.  *See, e.g.*, *Paige v. Police Dept' of Cty. of Schenectady*, 264 F.3d 197, 199 (2d Cir. 2001).  The incidents underlying Plaintiff's claims occurred over five years ago in 2018, and the applicable limitations periods for Plaintiff's §§ 1983 and 1985 claims have passed.  As such, to the extent Plaintiff has any remaining claims against a John Doe defendant, they are dismissed.

DSS Keller; and (6) claims for violation of due process of law against Sgt. Berghorn, Sgt. Scull, and C.O. Hendrickson, in contravention of the Fourteenth Amendment. (*Id.* at 16-23).

Defendants moved to dismiss the claims against Sgt. Berghorn, Sgt. Scull, and DSS Keller (Dkt. 10), and the Court granted in part and denied in part Defendants' motion, dismissing only Plaintiff's supervisory liability claim against Sgt. Berghorn, Sgt. Scull, and DSS Keller (Dkt. 18).   On May 19, 2023, Defendants filed the motion for summary judgment currently before the Court.  (Dkt. 36).  Plaintiff responded on October 10, 2023 (Dkt. 49), and Defendants replied on October 13, 2023 (Dkt. 50).

## DISCUSSION

### I.   Legal Standard for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the Court finds that no rational jury could find in favor of that party.  *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

"The moving party bears the burden of showing the absence of a genuine dispute as to any material fact . . . ."  *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014).  "Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary

materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial." *Johnson v. Xerox Corp.*, 838 F. Supp. 2d 99, 103 (W.D.N.Y. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (internal quotation marks and citation omitted). Specifically, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). Indeed, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

In addition, "[i]t is well settled that *pro se* litigants generally are entitled to a liberal construction of their pleadings, which should be read to raise the strongest arguments that they suggest." *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) (italics in original) (internal quotation marks and citation omitted). Despite this liberal approach, allegations unsupported by admissible evidence "do not create a material issue of fact" and cannot overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

## II.   <u>Eighth Amendment Excessive Force Claim</u>

Defendants argue that they are entitled to summary judgment on Plaintiff's Eighth Amendment excessive force claim against C.O. Hendrickson. (*See* Dkt. 36-3 at 19-23). More specifically, Defendants argue that Plaintiff's chipped tooth is a *de minimis* injury and that C.O. Hendrickson's use of force "was applied in a good-faith effort to maintain discipline." (*See id.* at 19).

"The Eighth Amendment protects prisoners from cruel and unusual punishment by prison officials." *Crawford v. Cuomo*, 796 F.3d 252, 256 (2d Cir. 2015). "A claim of cruel and unusual punishment in violation of the Eighth Amendment has two components—one subjective, focusing on the defendant's motive for his conduct, and the other, focusing on the conduct's effect." *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009). Simply put, "[t]o succeed on an Eighth Amendment claim, a plaintiff must show (1) a deprivation that is objectively, sufficiently serious . . . and (2) a sufficiently culpable state of mind on the part of the defendant official." *Hayes v. Dahlke*, 976 F.3d 259, 274 (2d Cir. 2020) (internal quotation marks and citation omitted).

"The objective component of a claim of cruel and unusual punishment focuses on the harm done, in light of contemporary standards of decency." *Wright*, 554 F.3d at 268 (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). Courts must consider whether "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." *Hudson*, 503 U.S. at 8 (quoting *Wilson v. Seiter*, 501 U.S. 294, 299 (1991)). The subjective component, on the other hand, "requires a showing that the defendant had the necessary level of culpability, shown by actions characterized by 'wantonness' in light

- 8 -

of the particular circumstances surrounding the challenged conduct." *Wright*, 554 F.3d at 268 (internal quotation marks and citation omitted). "[T]he definition of 'wantonness' varies according to the circumstances alleged," *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999), and whether conduct "can be characterized as 'wanton' depends upon the constraints facing the *official*," *Wilson*, 501 U.S. at 303 (emphasis in original).

Here, Defendants attack the objective prong by arguing that Plaintiff's injuries were *de minimis*. (*See* Dkt. 36-3 at 22-23). There is no dispute on this motion that Plaintiff's chipped tooth was the result of C.O. Hendrickson's use of force. (Dkt. 36-2 at ¶ 48). And according to Plaintiff, the chipping was so severe that a nerve ending was exposed, causing pain and making it difficult to consume hot and cold food and drinks. (*See* Dkt. 36-1 at 89). What is more, the tooth was not fixed until "two facilities later" after the remaining portion of the tooth had turned brown. (*See id.* at 89-90). The Court previously declined to find Plaintiff's chipped tooth *de minimis* as a matter of law at the Rule 12 stage and does not alter that conclusion for the present motion. *See, e.g.*, *Hudson*, 503 U.S. at 9 ("[T]he blows directed at Hudson, which caused bruises, swelling, loosened teeth, and a cracked dental plate, are not *de minimis* . . . ."); *May v. Levy*, 659 F. Supp. 3d 323, 337 (E.D.N.Y. 2023) (concluding that, in a Fourth Amendment excessive force context, an officer's "alleged beating of Plaintiff until she lost a front tooth was objectively unreasonable."); *Barnes v. Harling*, 368 F. Supp. 3d 573, 594 (W.D.N.Y. 2019) (acknowledging that the loss of a front tooth might be enough for pre-trial detainee to sustain a § 1983 claim against a corrections officer under the Fourteenth Amendment); *Russo v. Cnty. of Warren*, No. 1:12-CV-01616 FJS/CFH, 2015 WL 7738043, at *6 (N.D.N.Y. Dec. 1, 2015) ("[I]n this

case, Plaintiff has produced evidence of bruises and lacerations to her wrists and the side of her torso, as well as a chipped tooth.  This is sufficient to raise a genuine issue of material fact."); *Kilmartin v. Schaffer*, No. 9:12-CV-1167 (FJS/CFH), 2013 WL 5929447, at *5 (N.D.N.Y. Nov. 1, 2013) ("[T]he loss of a tooth is not a *de minimis* injury."), *abrogated on other grounds by Darnell v. Pineiro*, 849 F.3d 17, 29-30 (2d Cir. 2017).

Turning to the subjective prong, Defendants claim that C.O. Hendrickson applied an objectively reasonable amount of force in a good-faith effort to maintain order.  (*See* Dkt. 36-3 at 19-22).  "When prison officials are accused of using excessive force, the 'wantonness' issue turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'"  *Wright*, 554 F.3d at 268 (quoting *Hudson*, 503 U.S. at 7).  "To determine whether defendants acted maliciously or wantonly, a court must examine several factors including: the extent of the injury and the mental state of the defendant, as well as the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response."  *Harris v. Miller*, 818 F.3d 49, 63-64 (2d Cir. 2016) (internal quotation marks and citations omitted).

Further, prison administrators receive "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security," *Bell v. Wolfish*, 441 U.S. 520, 547 (1979), and this "deference extends to a prison security measure taken in response to an actual confrontation . . . [and] requires that neither judge nor jury freely substitute their

judgment for that of officials who have made a considered choice," *Whitley v. Albers*, 475 U.S. 312, 322 (1986).  *See Winters v. United States*, No. 10 Civ. 7571 (JMF), 2013 WL 1627950, at *6 (S.D.N.Y. Apr. 16, 2013) ("As courts in this Circuit have held, corrections officers responding to prison fights act with discretion based upon their judgment and experience.").

In this case, Plaintiff admitted in his deposition that he was thrown into the doorframe only after he stopped to kick at Rubin, who had jumped off the wall at Plaintiff, and "it looked like the incident was going to further occur." (*See* Dkt. 36-1 at 66-68).  C.O. Hendrickson was entitled to use some level of force to prevent a further escalation of the fight between Plaintiff and Rubin, and Defendants are correct that a simple push or shove is not the type of force generally found sufficient to support an Eighth Amendment excessive force claim.  *See Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) ("An inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim." (internal quotation marks and citations omitted)).  But Plaintiff is not simply claiming that he was the victim of a push or shove—instead, he testified at his deposition that C.O. Hendrickson grabbed him by the arm and "flung" him into the doorframe.  (Dkt. 36-1 at 69-70).  And as discussed above, the injuries he purportedly sustained are more than de minimis.  Moreover, Defendants fail to address how the Court might consider C.O. Hendrickson's state of mind or any efforts he made to temper the severity of his forceful response.  *See Harris*, 818 F.3d at 64 (finding genuine dispute of material fact concerning subjective component of Eight Amendment excessive force claim where defendants denied search occurred).

Plaintiff testified at his deposition that C.O. Hendrickson was the officer who threw him into the doorframe.  (Dkt. 36-1 at 69-70).  But C.O. Hendrickson asserted at his own deposition that he never left the second-floor orientation room and that some other officer helped Sgt. Scull escort Plaintiff to medical.  (*See id.* at 435-36, 463-65).  Further, Sgt. Scull could not remember the identity of the officer with whom he escorted Plaintiff to medical.  (*See id.* at 259-60).  Yet, for purposes of this motion, Defendants have conceded that the Court must assume that C.O. Hendrickson was the individual who inflicted force on Plaintiff.  (*See* Dkt. 36-2 at 6 n. 4).  Under the circumstances, the Court cannot possibly determine C.O. Hendrickson's state of mind, or whether he made any effort to temper the severity of his response.  Defendants cannot circumvent this issue by admitting C.O. Hendrickson's involvement solely for the purpose of their motion.  *See Brown v. Busch*, 954 F. Supp. 588, 593 (W.D.N.Y. 1997) ("[W]here the parties have relied solely on assertions made in affidavits or sworn statements to demonstrate the presence or lack of genuine issues of material fact, the nonmoving party 'will have his allegations taken as true, and will receive the benefit of the doubt when his assertions conflict with those of the movant.'" (alterations omitted) (quoting *Samuels v. Mockry*, 77 F.3d 34, 36 (2d Cir. 1996))).  In other words, it cannot be determined as a matter of law based on this record that the force utilized—even in response to Plaintiff's attempted kick of Rubin—was subjectively reasonable and necessary.  Defendants have submitted no proof on that issue, whether in the form of expert testimony or firsthand testimony from one with personal knowledge.  The only proof is Plaintiff's version of events, from which a reasonably jury could conclude that the force applied was subjectively unreasonable.

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *see Espada v. Schnieder*, 522 F. Supp.2d 544, 555 (S.D.N.Y. 2007).  There is a genuine issue of material fact as to C.O. Hendrickson's personal involvement that must be determined by a jury at trial.  *See Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.").  Defendants' motion for summary judgment on Plaintiff's Eighth Amendment excessive force claim is therefore denied.

## III.   **Eighth Amendment Failure-to-Protect Claim**

Defendants seek summary judgment on Plaintiff's Eighth Amendment failure-to-protect claim against DSS Keller.  (*See* Dkt. 36-3 at 11-19).  Defendants argue, among other things, that Plaintiff has not established DSS Keller's personal involvement.  (*See id.* at 11-13).

"The Eighth Amendment requires prison officials 'to take reasonable measures to guarantee the safety of the inmates.'" *Morgan v. Dzurenda*, 956 F.3d 84, 89 (2d Cir. 2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).  This responsibility "extends to 'protect[ing] prisoners from violence at the hands of other prisoners.'" *Id.* ( alteration   in original) (quoting *Farmer*, 511 U.S. at 832); *see Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997).  An incarcerated individual "seeking to establish an Eighth Amendment violation for failure to protect or deliberate indifference to safety must prove (1) 'that [the plaintiff] is incarcerated under conditions posing a substantial risk of serious harm,' and

(2) that the prison official had a 'sufficiently culpable state of mind,' which in 'prison-condition cases' is 'one of deliberate indifference to inmate health or safety.'" *Morgan*, 956 F.3d at 89 (alteration in original) (quoting *Farmer*, 511 U.S. at 834).

This "deliberate indifference" standard is comprised of both an objective and subjective prong. *See Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). "First, the alleged deprivation must be, in objective terms, sufficiently serious." *Id.* (internal quotation marks and citation omitted). "Second, the charged official must act with a sufficiently culpable state of mind." *Id.* This *mens rea* requirement is "more than negligence, but less than conduct undertaken for the very purpose of harm." *Id.* "More specifically, a prison official does not act in a deliberately indifferent manner unless that official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id.* (quoting *Farmer*, 511 U.S. at 837).

In this case, Plaintiff cannot establish DSS Keller's personal involvement in a failure-to-protect claim under the Eighth Amendment. "Courts have consistently held that, 'if an official receives a letter from an inmate and passes it on to a subordinate for response or investigation, the official will not be deemed personally involved with respect to the subject matter of the letter.'" *Lloyd v. City of New York*, 43 F. Supp. 3d 254, 269 (S.D.N.Y. 2014) (quoting *Rivera v. Fischer*, 655 F. Supp. 2d 235, 238 (W.D.N.Y. 2009)); *see Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997). DSS Keller testified in his deposition that it was standard practice for him to send out PC requests, such as Plaintiff's, on the day that they

were received, to a sergeant for investigation.  (*See* Dkt. 36-1 at 171-73, 221-22).  This

process is corroborated in a memo from DSS Keller on November 27, 2018:

> Please be advised that I receive numerous Protective Custody requests in my
> office on a daily basis.  Each request is assigned to the appropriate supervisor
> for investigation and recommendation for the Superintendent to review.  Any
> request by [Plaintiff] would have been assigned by a supervisor.  He states
> that he made a request to my office on 8/20 and was assaulted on 8/23.  The
> investigation was not completed when he was assaulted.

(Dkt. 36-1 at 762).  Further, DSS Keller testified that, at the time Plaintiff submitted his

request, DSS Keller's supervisor had the final authority to determine placement in PC.

(*See id.* at 164).  There is no proof in the record that DSS Keller did anything other than

direct Plaintiff's PC request to a subordinate for an investigation and response.  Thus, no

failure-to-protect claim can be maintained against DSS Keller, and Defendants' motion for

summary judgment on this claim is granted.

## IV.    <u>First Amendment Retaliation Claims</u>

Turning to Plaintiff's First Amendment retaliation claims, Defendants argue that

they are entitled to summary judgment on the claims against C.O. Hendrickson and Sgt.

Berghorn because Plaintiff failed to establish personal involvement.  (*See* Dkt. 36-3 at 23).

Further, Defendants assert that Plaintiff has not provided any evidence of Sgt. Scull's

adverse action or retaliatory motive.  (*See id.*).

"To prevail on a First Amendment retaliation claim, an inmate must establish '(1)

that the speech or conduct at issue was protected, (2) that the defendant took adverse action

against the plaintiff, and (3) that there was a causal connection between the protected

[conduct] and the adverse action.'"  *Hayes*, 976 F.3d at 272 (alteration in original) (quoting

*Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014)).  "To be an adverse action, retaliatory conduct must be the type that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights."  *Id.* (internal quotation marks and citation omitted).  However, prisoner retaliation claims must be analyzed "with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act."  *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (internal quotation marks and citation omitted).  Such claims must be "supported by specific and detailed factual allegations, [and] not stated in wholly conclusory terms."  *Id.* (internal quotation marks and citation omitted).

Here, Plaintiff's verbal complaints about C.O. Hendrickson's alleged use of excessive force constituted protected conduct.  *See, e.g.*, *Gill v. Pidlypchak*, 389 F.3d 379, 384 (2d Cir. 2004) ("[Plaintiff] has sufficiently alleged . . . participation in protected activity: the use of the prison grievance system."); *Sprau v. Coughlin*, 997 F. Supp. 390, 393 (W.D.N.Y. 2018) ("I find that plaintiff's conduct in threatening to file a complaint was protected by the First Amendment's guarantee of the right to petition the government for redress of grievance.").  Plaintiff alleges in his response that the following actions by C.O. Hendrickson, Sgt. Berghorn, and Sgt. Scull were retaliatory: (1) Sgt. Scull telling other incarcerated individuals that Plaintiff was a "rat"; (2) Sgt. Berghorn denying Plaintiff medical treatment for his chipped tooth; (3) Sgt. Scull's placing of Plaintiff into G Block with the same individuals who had heard Sgt. Scull call Plaintiff a "rat"; and (4) Sgt.

Berghorn and Sgt. Scull conspiring to cover up C.O. Hendrickson's use of excessive force. (*See* Dkt. 49 at 13-14).

From the outset, the Court finds that Plaintiff fails to allege, let alone provide any evidence of, C.O. Hendrickson's involvement in any of the alleged retaliatory actions. Plaintiff similarly fails to provide evidence that the alleged lack of treatment for his chipped tooth was the result of retaliatory action by Sgt. Berghorn. Further, Plaintiff's factual basis for the alleged cover up of C.O. Hendrickson's use of excessive force is a conversation between Sgt. Berghorn and Sgt. Scull, which Plaintiff supposedly overheard while receiving medical treatment. (*See* Dkt. 49 at 19-20). However, Plaintiff testified at his deposition that, although he saw Sgt. Berghorn and Sgt. Scull have a "hushed conversation," he could not hear the conversation but "assume[d] it was about something they did that they wasn't supposed to do." (Dkt. 36-1 at 79-80). Plaintiff "may not rely on conclusory allegations or unsubstantiated speculation" to avoid summary judgment. *See Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks and citation omitted); *see also Mack v. United States*, 814 F.2d 120, 124 (2d Cir. 1987) ("It is well settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment."). As such, Defendants' motion for summary judgment on Plaintiff's First Amendment retaliation claims against C.O. Hendrickson and Sgt. Berghorn is granted.

With respect to Plaintiff's retaliation claim against Sgt. Scull, generally speaking being called a "rat" or a "snitch" is insufficient itself to constitute adverse action for purposes of a First Amendment retaliation claim. *See Dawes v. Walker*, 239 F.3d 489, 493

(2d Cir. 2001) ("Absent some factual showing that the comments by the prison officials actually risked inciting other inmates against Dawes, we are unwilling to simply assume that prison inmates would be incited, without more, to attack 'one of their own' who was labeled an 'informant' and a 'rat' for complaining to prison supervisors about a prison guard's conduct."), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002).   This is true even when the comments are made publicly and with potentially nefarious intent.   *See, e.g.*, *Morales v. Mackalm*, 278 F.3d 126, 131 (2d Cir. 2002) (referring to plaintiff as a "stoolie," apparently labeling him as an informant to the other prisoners, insufficient to support First Amendment retaliation claim), *abrogated on other grounds by Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Zielinski v. Annucci*, 547 F. Supp. 3d 227, 233 (N.D.N.Y. 2021) (calling plaintiff a "rat" in front of other prisoners insufficient); *Smith v. Annucci*, No. 9:17-cv-00558 (AMN/TWD), 2023 WL 3853655, at *17 (N.D.N.Y. Feb. 28, 2023) (telling another prisoner that plaintiff was a sex offender, apparently with the intent to cause a fight between plaintiff and the other prisoner, insufficient); *Schmiege v. New York*, No. 21-CV-418-LJV, 2022 WL 16922123, at *12 (W.D.N.Y. Nov. 14, 2022) ("Schmiege's conclusory allegation that security staff made 'dehumanizing comments' about him and called him a '[r]at snitch' does not raise a viable retaliation claim." (alteration in original)); *Williams v. Muller*, No. 98 CIV. 5204(BSJ), 2001 WL 936297 at *3-4 (S.D.N.Y. Aug. 17, 2001) (spreading rumor that plaintiff was illegally selling supplies from Inmate Liaison Committee, allegedly with the intent to provoke confrontations between plaintiff and other prisoners, insufficient).

Even assuming that the events occurred as claimed by Plaintiff, and that after Plaintiff complained to Sgt. Scull about the force used by C.O. Hendrickson, he called him a "rat" in the presence of a "few inmates" (*see* Dkt. 36-1 at 75), no reasonable jury could conclude that this amounted to an infringement of Plaintiff's First Amendment rights. Plaintiff has "not articulate[d] any facts indicating he specifically was put at an enhanced risk of harm, or that any actual harm resulted" from Sgt. Scull calling him a "rat" or "snitch." *Burgess v. Banasike*, 636 F. Supp. 3d 351, 361 (W.D.N.Y. 2022).  At best, Plaintiff alleges an isolated threat that does not, under the circumstances, constitute an adverse action. *See Zielinski*, 547 F. Supp. 3d at 233 ("Though certain verbal threats may rise to the level of adverse actions, such threats are generally either quite specific or made on a repeated basis." (citation omitted)).  Indeed, after the incident and upon his return from the hospital, Plaintiff was placed in keep-lock, and subsequently PC, and never faced any further danger from the other incarcerated individuals at Elmira.  (*See* Dkt. 36-1 at 86-88). Defendants are therefore entitled to summary judgment on Plaintiff's First Amendment retaliation claim against Sgt. Scull as well.

## V.    Section 1985(2) Conspiracy Claims

The Court next addresses Plaintiff's conspiracy claims against C.O. Hendrickson, Sgt. Berghorn, and Sgt. Scull under 42 U.S.C. § 1985(2).  Defendants argue that summary judgment in their favor is appropriate because: (1) there was no underlying constitutional violation by C.O. Hendrickson to cover up; (2) Plaintiff provides only a conclusory allegation to establish a factual basis for a "meeting of the minds" between the conspirators;

and (3) the "intra-corporate conspiracy doctrine" bars Plaintiff's claim.  (*See* Dkt. 36-3 at 28-30).

Section 1985(2) provides:

> If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws . . . .

42 U.S.C. § 1985(2).  More succinctly, the section "contains two clauses prohibiting distinct conspiratorial conduct.  The first clause prohibits interference with federal court proceedings, while the second clause prohibits interference with state court proceedings, with the intent to deny an individual equal protection of the laws." *Butler v. Hesch*, 286 F. Supp. 3d 337, 364 (E.D.N.Y. 2018); *see Keating v. Carey*, 706 F.2d 377, 379 (2d Cir. 1983).

Further, "[t]o maintain an action under Section 1985, a plaintiff must prove some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003).  A plaintiff must also establish the existence of "'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators'

action.'"  *Reynolds v. Barrett*, 685 F.3d 193, 201-02 (2d Cir. 2012) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)).   However, "[t]he intracorporate conspiracy doctrine 'bars conspiracy claims against employees of such entities such as [DOCCS] (when those employees are alleged to have conspired solely with each other) unless, pursuant to the doctrine's "scope of employment" exception, the employees were pursuing personal interests wholly separate and apart from the entity by whom they were employed.'"  *Richard v. Fischer*, 38 F. Supp. 3d 340, 353 (W.D.N.Y. 2014) (second alteration in original) (quoting *Graham v. Peters*, No. 13-CV-705JTC, 2013 WL 5924727, at *5 (W.D.N.Y. Oct. 31, 2013)).   The Court concludes that Defendants are entitled to summary judgment on Plaintiff's § 1985(2) claims for four reasons.

First, Plaintiff does not provide any evidence of discriminatory animus by C.O. Hendrickson or Sgt. Berghorn.[4]   Second, Plaintiff's recollection of the conversation between Sgt. Berghorn and Sgt. Scull—the factual basis for the conspirators' "meeting of the minds"—was wholly speculative, as evidenced by Plaintiff's deposition testimony. And, in any case, a conversation between Sgt. Berghorn and Sgt. Scull cannot serve as the factual basis for C.O. Hendrickson's participation in the conspiracy. Third, C.O. Hendrickson, Sgt. Berghorn, and Sgt. Scull were, at all relevant times, employees of the New York State Department of Corrections and Community Supervision ("DOCCS") and all acts taken in furtherance of the alleged conspiracy occurred during the scope of their employment with DOCCS.  *See, e.g.*, *Richard*, 38 F. Supp. 3d at 353 ("Courts in the

---

[4]     Plaintiff testified as to an instance of Sgt. Scull's alleged discriminatory animus. (*See* Dkt. 36-1 at 97).

Western District of New York apply the intracorporate conspiracy doctrine to bar inmates'
claims against DOCCS.").  Fourth, and most importantly, there is no evidence in the record
that Sgt. Berghorn, Sgt. Scull, and C.O. Hendrickson, "by force, intimidation, or threat,"
conspired to: (1) deter any witness from attending or testifying to any matter freely, fully,
and truthfully in state or federal court; (2) injure Plaintiff himself or any witness for having
attended or testified in state or federal court; (3) influence presentment or indictment of
any grand jury in state or federal court; or (4) injure a juror in connection with a proceeding
in state or federal court.  *See Butler*, 286 F. Supp. 3d at 364.

In sum, it is clear to the Court that Plaintiff "simply tacked on a conclusory
allegation that [C.O. Hendrickson's, Sgt. Berghorn's, and Sgt. Scull's alleged
constitutional] violations were committed pursuant to a conspiracy.  Conspiracy allegations
couched in such generic and conclusory terms are insufficient to make out a § 1985 claim."
*See Doe v. Selsky*, 973 F. Supp. 2d 300, 305 (W.D.N.Y. 2013).  Defendants' motion for
summary judgment on Plaintiff's § 1985(2) conspiracy claims is granted in its entirety.

## VI.   Fourteenth Amendment Due Process Claims

Turning to Defendants' motion for summary judgment on Plaintiff's Fourteenth
Amendment due process claims against C.O. Hendrickson, Sgt. Berghorn, and Sgt. Scull,
the Due Process Clause of the Fourteenth Amendment states that no "State [shall] deprive
any person of life, liberty, or property without due process of law," U.S. Const. amend.
XIV, § 1, and "to present a due process claim, a plaintiff must establish (1) that he
possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a
result of insufficient process," *Giano v. Selsky*, 239 F.3d 223, 225 (2d Cir. 2001) (internal

- 22 -

quotation marks and citation omitted). However, "where another provision of the Constitution 'provides an explicit textual source of constitutional protection,' a court must assess a plaintiff's claims under that explicit provision and 'not the more generalized notion of substantive due process.'" *Kia P. v. McIntyre*, 235 F.3d 749, 757-58 (2d Cir. 2000) (quoting *Conn v. Gabbert*, 526 U.S. 286, 293 (1999)).

Here, Plaintiff fails to differentiate the conduct of C.O. Hendrickson, Sgt. Berghorn, and Sgt. Scull giving rise to his First and Eighth Amendment claims from the conduct at issue in his Fourteenth Amendment due process claims. Instead, Plaintiff attempts to distinguish his claims through the corresponding injuries; as to his Fourteenth Amendment claim, Plaintiff asserts that the actions of C.O. Hendrickson, Sgt. Berghorn, and Sgt. Scull allegedly covered up and tainted key evidence "which has now been hidden for use in subsequent proceedings." (Dkt. 49 at 20). But Plaintiff makes no effort to show the existence of key evidence that was tainted by C.O. Hendrickson, Sgt. Berghorn, and Sgt. Scull and then subsequently used against him in a proceeding. And to the extent Plaintiff alleges that his placement in keep-lock for six days upon his return from the hospital was a deprivation of a protected liberty interest, such a claim fails as a matter of law. *See, e.g.*, *Smart v. Goord*, 441 F. Supp. 2d 631, 640 (S.D.N.Y. 2006). For all these reasons, Defendants' motion for summary judgment on Plaintiff's Fourteenth Amendment due process claims against C.O. Hendrickson, Sgt. Berghorn, and Sgt. Scull is granted.

## VII.   Plaintiff's Damages Claims

At least at this point in time, the Court declines Defendants' invitation to dismiss Plaintiff's claims for emotional pain and suffering and for punitive damages. As discussed

above, there are issues of fact as to the extent of any physical injuries suffered by Plaintiff as a result of C.O. Hendrickson's use of force.  *See* 42 U.S.C. § 1997e(e); *Liner v. Goord*, 196 F.3d 132, 134 (2d Cir. 1999).  Regarding Plaintiff's claim for punitive damages, the Court concludes at least at this time that the issue is best left for a jury at trial.  *See Lee v. Edwards*, 101 F.3d 805, 808 (2d Cir. 1996).

## **CONCLUSION**

For the reasons set forth above, Defendants' motion for summary judgment (Dkt. 36) is GRANTED in part and DENIED in part.  Plaintiff's Eighth Amendment excessive force claim against Officer Hendrickson remains.  The Clerk of Court is instructed to terminate Superintendent Gregory Keller, Sgt. Matthew W. Scull, Sgt. Berghorn, and "Officer John Doe 1-10" as defendants in this matter.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:      March 4, 2024
            Rochester, New York

- 24 -